All right, the next case is Martin v. United Bridge Capital, et al. All right, Mr. Martin, I see you reserved one minute for rebuttal. Go ahead. Good afternoon, Your Honors. I'm Martin, Pro Secantus. I just want to quickly say that I had notable training while there were four kids, five kids. After 36 years, I'm going to be discharging veterans for services. It's a lawful channel, as I said. I brought this appeal to be dismissed based on standing. And I didn't realize I couldn't bring a cell phone up here as a Pro Secantus. I think my notes are on the phone, but I think I basically did it. I'm the owner of the subject property. I'm the guarantor of the note. I was the owner of the subject property when I engaged with these lenders. I was the owner of the subject. They required that the property be quit claims with LL State at the closing of this mortgage, a subject mortgage. Shortly after I realized there was a problem, I quit claiming the property back to myself. And shortly after that, I brought this action. I'm responsible, and so just a quick background. I'm a builder for 30 years. Home speculation, home speculation. Usually, I have to go to a private lender to borrow. The rate is what most people think is astronomical, but doable. Usually, between 80 and 12 percent in points and their real fees. This particular lender, sometimes you run into a lender, and besides them, I remember this before, who thinks that the homeowner's equity is their equity, and they will try to bully the people out of their property or out of their home, out of their house. And that's exactly what happened here. It said there was prepaid interest per year. It said the prepaid interest ran out, and my default interest rate is 45 percent. Apparently, they didn't know that the state of Massachusetts had a usury law, which required them to, you couldn't charge over 20 percent. And if they did so, they had to register with the state attorney general's office. They didn't do it with the LL State, but only in points at the time. And that's basically it. I don't understand anyone who does it. It's a home I occupy. I own. I'm the guarantor of the mortgage. They said to me, so on the argument, we had a settlement conference with some of the lenders that are involved here, and we agreed to a settlement, and I didn't hear from them for months. They said they were drawing it up. And then heard from the current owner of the mortgage, who said, oh, they're out of the picture. We're now proposing. So, basically, they put a layer between themselves and the usury lenders. And I think it's a layer I could crack in court, given the opportunity. I didn't have the money to hire an attorney. All the equity would have been gone quickly if I had to get an attorney for the LL State. And I really don't think it's necessary that I have one. That's basically it. All right. Unless my colleagues have any questions, we'll hear from the other side.  Thank you, Your Honor. Mr. Lau. Thank you, Your Honor. I'm Julia Lau, a defendant at release. College Degree Express is a limited liability corporation that obtained a loan from one of the defendants. The loan was secured by a mortgage owned by College Degree Express. Unhappy with the terms of the loan, Mr. Martin, who is the sole member of College Degree Express, sued the defendants. However, the district court held Mr. Martin is not a party to the loan, and therefore federal law prohibits him from bringing this lawsuit. The federal Constitution requires that a plaintiff suffer a concrete particularized injury that is addressed by this court's intervention. Mr. Martin has not suffered such an injury. Even assuming all of his allegations to be true, Mr. Martin has no legal relationship with the defendants. He signed no contract with them. Any injury suffered as a result of the loan provisions runs to the signatory of the loan, and that's College Degree Express. As a result, as the district court held, College Degree Express... Is it correct that he was the guarantor of the loan? Yes. He just said that. So he must have signed a guarantee. So under Connecticut law, the guarantee relationship is between the guarantor and the borrower. Oh, and College Degree? Correct. I see. Mr. Martin's primary argument on appeal, however, is that he is standing because Connecticut law gives it to him. But state law cannot expand or contract federal law on standing. As the district court held in Holland v. Perry, a state cannot simply issue to private parties who otherwise lack standing a ticket to the federal courthouse. This does not mean, as we discussed briefly, Adam Judge Chin, that state law is irrelevant to the federal standing. State law clarifies the legal relationships between entities and is consulted to ensure that the entity that suffers the injury is the entity that is bringing the claim. In this case, Connecticut law unambiguously states that the LFA is a distinct legal entity from its members. Because Mr. Martin is legally distinct from College Degree Express, and the LFA liabilities don't run to Mr. Martin personally, neither do his injuries. Without a legal injury, Mr. Martin has no standing in federal court. If the court has no other questions, we will move on. Could this claim be brought by Mr. Martin in state court then, in Connecticut's state court? Yes, Your Honor. State court, under Saunders v. Greiner, creates an opportunity for the member of school member LFD to bring a direct claim alleging harms that are suffered by the LFD. Can you bring that direct claim in state court? And this dismissal was, am I correct, without prejudice because it was premised on a lack of subject matter jurisdiction? So Mr. Martin's loss in this case, if it were left to stand, would not prohibit him from asserting standing in a state court action? I don't know what other barriers or limits might – I don't know how the state court works, but at least that wouldn't bar that. Is your view? Yes, Your Honor. Okay. All right, thank you. Okay, Mr. Martin, you have one minute and rebuttal. Thank you, Your Honor. Just quickly, the subject property is the state of Massachusetts. And so it's the legacy of the United States of America, as she just said. And yes, the first words out of the current owner of the mortgage mouth to me, they said, we own the mortgage. And we own the mortgage. We're going to foreclose the mortgage. Your claim to duty don't affect us. We've heard that, and we don't care. His next statement was, if you do anything to harm that property, we will come after you because you signed the first claim on the commissary note. And we will get an official judgment against you, thinking that I might destroy the property or hurt the property. I don't know what he thought. But that was his first claim immediately, that I was – excuse me, on the commissary note that I signed. That's all. All right. Thank you, Your Honor. Thank you. Thank you, Mr. Martin. Thank you, Mr. Palau. We'll reserve the decision. Have a good day.